UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GARRY CHARLES,

                              Plaintiff,

              v.

NYPD OFFICER RICHARD LIGUORI,
NYPD OFFICER DOES 1-5,

                              Defendants.

ECF CASE

Case No. 14-CV-6803

**COMPLAINT**

**JURY TRIAL DEMANDED**

      COMES NOW THE PLAINTIFF, Garry Charles, by his attorney, Steven M. Warshawsky, for his complaint against the defendants and alleging as follows:

**NATURE OF THE CASE**

      1.     This is a civil rights action under 42 U.S.C. § 1983 arising from the plaintiff's arrest on September 12, 2014, by officers of the New York City Police Department.  These officers subjected the plaintiff to false arrest, false imprisonment, excessive force, and other abuses of police authority, without probable cause, arguable probable cause, or other legal justification.  The plaintiff is entitled to compensatory damages for the harms he has suffered as a result of the defendants' unlawful conduct, punitive damages to punish and deter the defendants from engaging in similar unlawful conduct in the future, attorney's fees and costs, and all available legal and equitable relief.  The plaintiff demands trial by jury.

## PARTIES

2.      Plaintiff **Garry Charles** is a citizen of New York, and resides in Brooklyn, New York.  Mr. Charles was born in 1985.  He is African-American.

3.      Defendant **NYPD Officer Richard Liguori** (Shield No. 17589; Tax No. 950752) is an employee of the New York City Police Department. Upon information and belief, his place of business is the NYPD 67th Precinct located at 2820 Snyder Avenue, Brooklyn, New York, 11226; (718) 287-3211.  Officer Liguori personally participated in the unlawful conduct alleged herein.  At all relevant times, Officer Liguori was acting under color of state law and in the scope of his employment with the NYPD.  Officer Liguori is being sued in his individual capacity under 42 U.S.C. § 1983.

4.      Defendant **NYPD Officer Does 1-5** are employees of the New York City Police Department.  Upon information and belief, their place of business is the NYPD 67th Precinct located at 2820 Snyder Avenue, Brooklyn, New York, 11226; (718) 287-3211.  Officer Does 1-5 personally participated in the unlawful conduct alleged herein.  At all relevant times, Officer Does 1-5 were acting under color of state law and in the scope of their employment with the NYPD.  Officer Does 1-5 are being sued in their individual capacity under 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because this action arises under the Constitution and civil rights laws of the United States.

2

6.     This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

7.     There are no administrative exhaustion requirements for bringing the plaintiff's claims under 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

8.     The events in this case took place on September 12, 2014, around 9:00 p.m., on a public sidewalk near the northwest corner of Troy Avenue and Avenue D in Brooklyn, New York.

9.     Mr. Charles was part a group of approximately 10 persons, all minority males, who were talking with a pastor from a local church about community issues.

10.     The group, including Mr. Charles, were peaceably assembled on a public sidewalk discussing matters of public concern.

11.     The group, including Mr. Charles, were not loitering for the purpose of begging, gambling, solicitation, prostitution, or any other illegal purpose.

12.     The group, including Mr. Charles, were not fighting or acting in a violent, tumultuous, or threatening manner.

13.     The group, including Mr. Charles, were not making unreasonable noise.

14.     The group, including Mr. Charles, were not using abusive or obscene language or making obscene gestures.

15.     The group, including Mr. Charles, were not obstructing vehicular or pedestrian traffic.

16.     The group, including Mr. Charles, were not creating a hazardous or physically offensive condition.

17.     The group, including Mr. Charles, were not behaving in any manner with the intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof.

18.     The group, including Mr. Charles, were not causing any public inconvenience, annoyance, or alarm.

19.     Officer Liguori and his partner, a black female police officer, approached the group and ordered them "to disperse."

20.     There was no lawful basis for Officer Liguori and his partner to order the group to disperse.

21.     The group, including Mr. Charles, were not engaging in any disorderly, illegal, or criminal activity.

22.     Upon information and belief, no complaints had been made to the police about the group.

23.     Upon information and belief, Officer Liguori and his partner ordered the group to disperse based on an NYPD policy and practice of prohibiting groups of minority persons from publicly congregating in neighborhoods deemed "high crime" areas by the NYPD.

24.     This NYPD policy and practice violates the First, Fourth, and Fourteenth Amendments of the U.S. Constitution and is contrary to state law as propounded by the New York Court of Appeals.  See, e.g., People v. Johnson, 22 N.Y.3d 1162, 1164, 9 N.E.3d 902, 986 N.Y.S.2d 407 (2014) (mem.) ("It is not disorderly conduct, however, for a small group of people, even people of bad reputation, to stand peaceably on a street corner.").

4

25.     Mr. Charles and others in the group protested to the police officers that they were doing nothing wrong and objected to the order to disperse.

26.     Officer Liguori then stated, "All right.  We gave you guys a lawful order to disperse.  You don't wanna go, we have to see your ID."  Mr. Charles responded, "I don't have to give you nothing, sir."

27.     Mr. Charles slowly backed away, continuing to protest.  Among other comments, Mr. Charles stated, "I know my rights" and "I don't have to go nowhere."

28.     Mr. Charles did not use any profanity or make any hostile or threatening comments towards the police officers.

29.     Mr. Charles' verbal protests to the police officers were protected speech under the First Amendment.

30.     After approximately thirty seconds, while Mr. Charles continued to protest verbally, Officer Liguori placed his left hand on his equipment belt and moved towards Mr. Charles, who remarked, "And then you take cuffs" and "Don't touch me."

31.     Officer Liguori grabbed Mr. Charles and threw him forcefully to the ground.  By this time, other police officers had arrived on the scene and participated in the arrest of Mr. Charles.

32.     Mr. Charles repeatedly protested, "What did I do?  What did I do?" Other persons in the group yelled at the police officers, "The pastor is right there!" and "He didn't do nothing!"

33.     Officer Liguori and the other police officers manhandled Mr. Charles in a very rough manner, pressing down on his body with their hands and legs and twisting his arms and hands behind his back, then handcuffed him, all while Mr. Charles was lying face down on the sidewalk.

5

34.     There was no probable cause, arguable probable cause, or other legal justification for Mr. Charles' arrest.

35.     No other persons in the group were arrested.

36.     Upon information and belief, Officer Liguori decided to arrest Mr. Charles, and no other persons, at least in part in retaliation for Mr. Charles' exercise of rights under the First Amendment.

37.     Mr. Charles was placed in a police van and transported to the 67th Precinct.  He arrived at the precinct around 9:30 p.m.  While he was being walked into the precinct, one of the police officers told him to "shut up" and threatened to "punch" him in the face.

38.     Mr. Charles spent approximately two hours in a holding cell at the precinct.  During this time, to punish Mr. Charles, Officer Liguori and the other police officers refused to remove his handcuffs and refused to allow Mr. Charles to use a restroom.

39.     Mr. Charles complained to the officers that he felt lightheaded and was having trouble breathing.  EMTs were called and Mr. Charles was transported to Kings County Hospital.

40.     Notably, the handcuffs were removed from Mr. Charles prior to the EMTs' arrival, to cover up the police officers' unlawful abuse of Mr. Charles.

41.     Mr. Charles arrived at the hospital around midnight.  Mr. Charles was kept in restraints the entire time he was at the hospital.  At the hospital, Mr. Charles complained about injuries to his left shoulder and right hand and wrist. Mr. Charles was examined and x-rayed, and given a sling and non-prescription pain killers.  He was advised to follow up with his doctor.  Mr. Charles was discharged

from the hospital around 5:00 a.m. on September 13, 2014, and transported back to the 67th Precinct.

42.     Mr. Charles was detained in a holding cell at the 67th Precinct until sometime between 2:00 p.m. and 3:00 p.m., when he was transported to central booking in Brooklyn.

43.     The criminal complaint, sworn to by Officer Liguori, charged Mr. Charles with disorderly conduct (P.L. 240.20(6)) and resisting arrest (P.L. 205.30). The factual portion of the complaint stated: "Deponent states that, at the above time and place, defendant congregated in front of the above mentioned locations with approximately twenty unapprehended others. Deponent further states that, at the above time and place, deponent repeatedly told defendant and others to disperse and that defendant refused to comply with said lawful order. Deponent further states that, at the above time and place, the defendant did resist lawful arrest by raising defendant's arms above defendant's head and then stiffened arms and then flailed arms while the deponent attempted to place the defendant in handcuffs."

44.     Mr. Charles was detained at central booking until sometime between 7:00 p.m. and 8:00 p.m., when he was taken before a judge. At that time, the charges against him were dismissed and sealed pursuant to an adjournment in contemplation of dismissal (C.P.L. 170.55).

45.     Mr. Charles spent a total of approximately 22 hours in police custody.

46.     Mr. Charles continues to experience pain, discomfort, and physical limitations in his left shoulder as a result of this incident.

## COUNT ONE: FALSE ARREST
### (Section 1983; Officer Liguori)

47.     Plaintiff repeats and re-alleges Paragraphs 1-46 above.

48.     The elements of a claim for false arrest under Section 1983 are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.

49.     Officer Liguori intended to, and did, confine Mr. Charles.

50.     Mr. Charles was conscious of the confinement.

51.     Mr. Charles did not consent to the confinement.

52.     The confinement was not otherwise privileged.

53.     There was no probable cause, arguable probable cause, or other legal justification for Officer Liguori to arrest Mr. Charles.

54.     Officer Liguori is not entitled to qualified immunity.

55.     Officer Liguori's actions violated Mr. Charles' clearly established rights under the Fourth Amendment.

56.     It was not objectively reasonable for Officer Liguori to believe that his actions did not violate Mr. Charles' rights under the Fourth Amendment.

57.     Officer Liguori acted with intentional, knowing, callous, and/or reckless indifference to Mr. Charles' rights under the Fourth Amendment.

58.     As a result of Officer Liguori's unlawful conduct, Mr. Charles suffered loss of liberty, insult and embarrassment, physical pain and suffering (from being manhandled and handcuffed and confined in uncomfortable and unsanitary cells), emotional pain and suffering, and other compensable injuries, for which he is entitled to an award of compensatory damages.

59.     Mr. Charles is entitled to an award of punitive damages to punish Officer Liguori for his unlawful conduct and to deter him from engaging in similar unlawful conduct in the future.

## COUNT TWO: FALSE ARREST
### (Section 1983; Officer Does 1-5)

60.     Plaintiff repeats and re-alleges Paragraphs 1-59 above.

61.     The elements of a claim for false arrest under Section 1983 are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.

62.     Officer Does 1-5 intended to, and did, confine Mr. Charles.

63.     Mr. Charles was conscious of the confinement.

64.     Mr. Charles did not consent to the confinement.

65.     The confinement was not otherwise privileged.

66.     There was no probable cause, arguable probable cause, or other legal justification for Officer Does 1-5 to arrest Mr. Charles.

67.     Officer Does 1-5 are not entitled to qualified immunity.

68.     Officer Does 1-5's actions violated Mr. Charles' clearly established rights under the Fourth Amendment.

69.     It was not objectively reasonable for Officer Does 1-5 to believe that their actions did not violate Mr. Charles' rights under the Fourth Amendment.

70.     Officer Does 1-5 acted with intentional, knowing, callous, and/or reckless indifference to Mr. Charles' rights under the Fourth Amendment.

71.     As a result of Officer Does 1-5's unlawful conduct, Mr. Charles suffered loss of liberty, insult and embarrassment, physical pain and suffering (from

9

being manhandled and handcuffed and confined in uncomfortable and unsanitary cells), emotional pain and suffering, and other compensable injuries, for which he is entitled to an award of compensatory damages.

72.     Mr. Charles is entitled to an award of punitive damages to punish Officer Does 1-5 for their unlawful conduct and to deter them from engaging in similar unlawful conduct in the future.

## COUNT THREE: EXCESSIVE FORCE - ARREST
### (Section 1983; Officer Liguori)

73.     Plaintiff repeats and re-alleges Paragraphs 1-72 above.

74.     Plaintiff's federal law excessive force claim arises under the Fourth Amendment because the excessive force was used before the plaintiff's arraignment.

75.     Officer Liguori used excessive force against Mr. Charles in violation of the Fourth Amendment when, without justification, he grabbed Mr. Charles and threw him forcefully to the ground, manhandled Mr. Charles in a very rough manner, pressed down on his body with his hands and legs, twisted his arms and hands behind his back, and handcuffed him.

76.     There was no legal justification for Officer Liguori's violent actions.

77.     Officer Liguori's violent actions were objectively unreasonable.

78.     Officer Liguori used more than de minimis force against Mr. Charles.

79.     Officer Ligouri is not entitled to qualified immunity.

80.     Officer Liguori's actions violated Mr. Charles' clearly established rights under the Fourth Amendment.

81.     It was not objectively reasonable for Officer Liguori to believe that his actions did not violate Mr. Charles' rights under the Fourth Amendment.

82.     Officer Liguori acted with intentional, knowing, callous, and/or reckless indifference to Mr. Charles' rights under the Fourth Amendment.

83.     As a result of Officer Liguori's unlawful conduct, Mr. Charles suffered physical pain and suffering (including but not limited to injuries to his left shoulder and right hand and wrist), emotional pain and suffering, and other compensable injuries, for which he is entitled to an award of compensatory damages.

84.     Mr. Charles is entitled to an award of punitive damages to punish Officer Liguori for his unlawful conduct and to deter him from engaging in similar unconstitutional conduct in the future.

## COUNT FOUR: EXCESSIVE FORCE - ARREST
### (Section 1983; Officer Does 1-5)

85.     Plaintiff repeats and re-alleges Paragraphs 1-84 above.

86.     Plaintiff's federal law excessive force claim arises under the Fourth Amendment because the excessive force was used before the plaintiff's arraignment.

87.     Officer Does 1-5 used excessive force against Mr. Charles in violation of the Fourth Amendment when, without justification, they manhandled Mr. Charles in a very rough manner, pressed down on his body with his hands and legs, twisted his arms and hands behind his back, and handcuffed him.

88.     There was no legal justification for Officer Does 1-5's violent actions.

89.     Officer Does 1-5's violent actions were objectively unreasonable.

90.     Officer Does 1-5 used more than de minimis force against Mr. Charles.

91.     Officer Does 1-5 are not entitled to qualified immunity.

92.     Officer Does 1-5's actions violated Mr. Charles' clearly established rights under the Fourth Amendment.

93. It was not objectively reasonable for Officer Does 1-5 to believe that their actions did not violate Mr. Charles' rights under the Fourth Amendment.

94. Officer Does 1-5 acted with intentional, knowing, callous, and/or reckless indifference to Mr. Charles' rights under the Fourth Amendment.

95. As a result of Officer Does 1-5's unlawful conduct, Mr. Charles suffered physical pain and suffering (including but not limited to injuries to his left shoulder and right hand and wrist), emotional pain and suffering, and other compensable injuries, for which he is entitled to an award of compensatory damages.

96. Mr. Charles is entitled to an award of punitive damages to punish Officer Does 1-5 for their unlawful conduct and to deter them from engaging in similar unconstitutional conduct in the future.

## COUNT FIVE: EXCESSIVE FORCE - PRECINCT
### (Section 1983; Officer Liguori)

97. Plaintiff repeats and re-alleges Paragraphs 1-96 above.

98. Plaintiff's federal law excessive force claim arises under the Fourth Amendment because the excessive force was used before the plaintiff's arraignment.

99. Officer Liguori used excessive force against Mr. Charles in violation of the Fourth Amendment when, without justification, he punished Mr. Charles by refusing to remove his handcuffs and refusing to allow Mr. Charles to use a restroom for approximately two hours while he was detained in a holding cell at the 67th Precinct.

100. There was no legal justification for Officer Liguori's punitive actions.

101. Officer Liguori's punitive actions were objectively unreasonable.

102. Officer Liguori used more than de minimis force against Mr. Charles.

103. Officer Liguori is not entitled to qualified immunity.

12

104.    Officer Liguori's actions violated Mr. Charles' clearly established rights under the Fourth Amendment.

105.    It was not objectively reasonable for Officer Liguori to believe that his actions did not violate Mr. Charles' rights under the Fourth Amendment.

106.    Officer Liguori acted with intentional, knowing, callous, and/or reckless indifference to Mr. Charles' rights under the Fourth Amendment.

107.    As a result of Officer Liguori's unlawful conduct, Mr. Charles suffered physical pain and suffering (from the handcuffing and being confined in uncomfortable and unsanitary cells), emotional pain and suffering, and other compensable injuries, for which he is entitled to an award of compensatory damages.

108.    Mr. Charles is entitled to an award of punitive damages to punish Officer Liguori for his unlawful conduct and to deter him from engaging in similar unconstitutional conduct in the future.

## COUNT SIX: EXCESSIVE FORCE - PRECINCT
### (Section 1983; Officer Does 1-5)

109.    Plaintiff repeats and re-alleges Paragraphs 1-108 above.

110.    Plaintiff's federal law excessive force claim arises under the Fourth Amendment because the excessive force was used before the plaintiff's arraignment.

111.    Officer Does 1-5 used excessive force against Mr. Charles in violation of the Fourth Amendment when, without justification, they punished Mr. Charles by refusing to remove his handcuffs and refusing to allow Mr. Charles to use a restroom for approximately two hours while he was detained in a holding cell at the 67th Precinct.

112.    There was no legal justification for Officer Does 1-5's punitive actions.

113.    Officer Does 1-5's punitive actions were objectively unreasonable.

114.   Officer Does 1-5 used more than de minimis force against Mr. Charles.

115.   Officer Does 1-5 are not entitled to qualified immunity.

116.   Officer Does 1-5's actions violated Mr. Charles' clearly established rights under the Fourth Amendment.

117.   It was not objectively reasonable for Officer Does 1-5 to believe that their actions did not violate Mr. Charles' rights under the Fourth Amendment.

118.   Officer Does 1-5 acted with intentional, knowing, callous, and/or reckless indifference to Mr. Charles' rights under the Fourth Amendment.

119.   As a result of Officer Does 1-5's unlawful conduct, Mr. Charles suffered physical pain and suffering (from the handcuffing and being confined in uncomfortable and unsanitary cells), emotional pain and suffering, and other compensable injuries, for which he is entitled to an award of compensatory damages.

120.   Mr. Charles is entitled to an award of punitive damages to punish Officer Does 1-5 for their unlawful conduct and to deter them from engaging in similar unconstitutional conduct in the future.


**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Federal Rule of Civil Procedure 38, plaintiff Garry Charles hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## **PRAYER FOR RELIEF**

WHEREFORE the Plaintiff demands judgment against the Defendants for:

A.   A judgment declaring that Officer Liguori is liable for false arrest (Count One) and awarding compensatory and punitive damages in an amount no less than $150,000;

B.   A judgment declaring that Officer Does 1-5 are liable for false arrest (Count Two) and awarding compensatory and punitive damages in an amount no less than $150,000;

C.   A judgment declaring that Officer Liguori is liable for excessive force (Count Three) and awarding compensatory and punitive damages in an amount no less than $250,000;

D.   A judgment declaring that Officer Does 1-5 are liable for excessive force (Count Four) and awarding compensatory and punitive damages in an amount no less than $250,000;

E.   A judgment declaring that Officer Liguori is liable for excessive force (Count Five) and awarding compensatory and punitive damages in an amount no less than $50,000;

F.   A judgment declaring that Officer Does 1-5 are liable for excessive force (Count Six) and awarding compensatory and punitive damages in an amount no less than $50,000;

G.   Pre-judgment and post-judgment interest as allowed by law;

H.   Attorney's fees, costs, and disbursements as allowed by law; and

I.      All other relief that the Plaintiff may be entitled to under law, or as

        justice may require.


Dated:      November 19, 2014
            New York, NY

                                    Respectfully submitted,

                                    *Steven M. Warshawsky*

                        By:     _____
                                    STEVEN M. WARSHAWSKY (SW 5431)
                                    The Warshawsky Law Firm
                                    Empire State Building
                                    350 Fifth Avenue, 59th Floor
                                    New York, NY  10118
                                    Tel:  (212) 601-1980
                                    Fax:  (212) 601-2610
                                    Email:  smw@warshawskylawfirm.com
                                    Website:  www.warshawskylawfirm.com